WILLIAM A. EARLE *vs.* COMMONWEALTH.

Worcester.    January 10, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Constitutional Law.    Eminent Domain.    Metropolitan Water Supply.    Damages.*

The Legislature in providing compensation for damage caused by the exercise of the right of eminent domain may provide compensation for rights the taking of which could have been authorized without a provision for payment.

The provision of the metropolitan water supply act, St. 1895, c. 488, § 14, providing compensation for persons having an established business on land in West Boylston, whether taken under the act or not, if their business is decreased in value by the carrying out of the act, is constitutional.

A practising physician living and having his office in a house in West Boylston belonging to his wife is an individual owning " an established business on land in the town of West Boylston " entitled to damages under St. 1895, c. 488, § 14, to the amount which his business is decreased in value by the carrying out of the act.

In estimating the decrease in value of the business of a practising physician having his office in West Boylston by the carrying out of the metropolitan water supply act, the damages are to be assessed for the actual decrease in value of that business, and not merely for the decrease in such elements of the value as admit of being sold.    The decrease in the money value of the petitioner's business to himself is to be estimated.

PETITION for an assessment of damages under St. 1895, c. 488, § 14, alleging that the petitioner had on April 1, 1895, an established business on land in the town of West Boylston as a practising physician and surgeon, which was greatly decreased in value by the carrying out of the act, filed February 3, 1899.

The case came on to be heard before *Loring,* J., upon the report of commissioners theretofore appointed to hear and report upon it, and by agreement of the parties the justice reserved the case for the consideration of the full court, such judgment to be entered as the court should deem proper.

The report of the commissioners was as follows:

The petitioner's claim is based upon provisions of § 14 of the metropolitan water supply act, which are as follows:

" In case any individual or firm owning on the first day of April in the year one thousand eight hundred and ninety-five, an established business on land in the town of West Boylston, whether the same shall be taken or not under this act, or the heirs or personal representatives of such individual or firm, shall deem that such business is decreased in value by the carrying out of this act, whether by loss of custom or otherwise, and unable to agree with said board as to the amount of damages to be paid for such injury, such damages shall be determined and paid in the manner hereinbefore provided."

The petitioner was a practising physician, who had been established in West Boylston since 1881, and who on the first day of April, 1895, resided and had his office in a house belonging to his wife in West Boylston, which was taken by the metropolitan water board under this act. He had built up a practice which extended throughout West Boylston, Holden, West Sterling, the edge of Princeton, Boylston Centre and other places; his gross income from his practice, up to 1891 or 1892, was about $2,500 per year on the average; in the year 1893 he doubled the charges for his visits and consultations and in 1894 opened an office in Worcester, which he kept till 1898; he visited his Worcester office at first, three afternoons a week, afterwards every afternoon; his gross income according to testimony, in the year 1892 was $3,046.25, in 1893 $2,368.75, in 1894 $1,286.25, in 1895 $1,365.25, in 1896 $1,315.20, in 1897 $1,073.25, not including his Worcester practice.

After leaving West Boylston in 1898, the petitioner went to New York, and studied to become a specialist in diseases of the eye; he resumed practice in Massachusetts in 1900, as a specialist, and has not since earned any money beyond his expenses.

The counsel for the Commonwealth objected to the claim of the petitioner, upon the ground that he had not shown that he owned "An established business on land in the town of West Boylston," and therefore was entitled to no damages.

The counsel for the petitioner contended that the statute

was made to cover cases of injury, precisely like the one in question.

The commissioners find as a fact, that the taking of land at West Boylston, which embraced practically all the business part of the town, and which wiped out all the important industries, necessarily affected the plaintiff's business to a considerable extent. They therefore report that, if the court shall be of the opinion, that the provisions of § 14 are intended to cover the injuries to the business of a practising physician, who resided within the territory taken, and visited patients there and in the neighboring towns above referred to, and there had his established office to which patients resorted for medical advice, the petitioner is entitled to recover damages for such injuries.

The Commonwealth contended that the rule of damages to be applied in this case was the difference between the market value of the business on the first day of April, 1895, and its market value, after the carrying out of the provisions of this act, and requested the commissioners to rule as follows:

1 and 2. That the petitioner has not shown that he owns or owned an established business in or on land in the town of West Boylston, and this commission must therefore report that under the terms of this statute he is entitled to no damages.

3. If the petitioner is entitled to recover at all, the measure of his damage is the difference between the market value of the business owned by him on land in West Boylston, on the first day of April, 1895, and its market value, after the carrying out of this act.

4. That the commissioners find as a fact, that the established business owned by the petitioner upon the first day of April, 1895, on the land in the town of West Boylston, was not decreased in value by the carrying out of this act.

5. The evidence of what the petitioner as a specialist and teacher of diseases of the eye has earned since his abandonment of his general practice, is no evidence of what he could have earned had he attempted to build up a general practice, and cannot be considered.

The commissioners refused to give the rulings above requested, and the respondent excepted.

The petitioner contended that he was entitled to recover in these proceedings such a sum of money as would give him the equivalent of his loss in income, by reason of the taking, for such reasonable time as would be required to get back into a practice of the same amount which he had in West Boylston on April 1, 1895. In case the court shall be of the opinion that the petitioner is entitled to recover anything, under the provisions of this act, and shall adopt the rule of damages contended for by the respondent, the commissioners find the amount of damages under such rule to be $750.

In case the court shall adopt the rule of damages contended for by the petitioner, the commissioners find that under that ruling the petitioner should receive $7,360.

The respondent contended that the provisions of the act, so far as § 14 is concerned, were unconstitutional. The commissioners do not pass upon this question, as they do not understand it to be open to them, under the terms of their appointment.

*R. M. Morse,* for the petitioner.

*J. M. Hallowell & A. W. De Goosh,* Assistant Attorneys General, for the Commonwealth.

HOLMES, C. J. This is a petition brought by a practising physician to recover for damage to his business by the carrying out of the metropolitan water supply act. St. 1895, c. 488, § 14. The case was referred to a commission. It reports that the plaintiff lived and had his office in West Boylston and had a practice which extended through that and some neighboring towns. The taking of land at West Boylston necessarily affected his business to a considerable extent, and the damages are assessed at alternative sums according to the rules suggested by the plaintiff and defendant respectively. The questions of law arising on the report were reserved by one of the justices for the consideration of the full court.

The Commonwealth in the first place contends that the material portion of the statute, if it applies to cases like this, is unconstitutional. The ground seems to be that taxes cannot be levied for purposes of this sort, except to pay for property taken or destroyed, and that the business of a doctor is not property within the principle. The test of what may be required to be

paid for if destroyed or damaged under the power of eminent domain, is not whether the same thing could have been sold, nor is it whether the destruction or harm could have been authorized without a provision for payment. Very likely the plaintiff's rights were of a kind that might have been damaged if not destroyed without the constitutional necessity of compensation. But some latitude is allowed to the Legislature. It is not forbidden to be just in some cases where it is not required to be by the letter of paramount law. We think it so plain that, as was assumed by everybody in *Sawyer* v. *Metropolitan Water Board*, 178 Mass. 267, the provision is constitutional, that we prefer to say so without stopping to consider whether the question is open. See *Opinion of Justices*, 175 Mass. 599; *Town of Guilford* v. *Supervisors of Chenango County*, 3 Kernan, 143, 149; *Blanding* v. *Burr*, 13 Cal. 343; *United States* v. *Realty Co.* 163 U. S. 427; *Guthrie National Bank* v. *Guthrie*, 173 U. S. 528, 536, 537; *New Orleans* v. *Clark*, 95 U. S. 644.

Next it is contended that the petitioner was not an "individual . . . owning . . . an established business on land in the town of West Boylston" within the meaning of § 14. A majority of the court does not see why not. The defendant cites *Ex parte Breull*, 16 Ch. D. 484, for the proposition that the word "business" has no definite technical meaning. We agree, and think it quite wide enough to include the practice of a doctor. It is suggested that the practice was not established on land in West Boylston. It is true that a doctor can give advice elsewhere than in his office, and that in fact he does so to a greater extent than a shopkeeper sells his goods outside his shop. But no less than a shopkeeper a doctor usually has, as the petitioner had, a locally established centre to which patients resort, and from which he goes his rounds. There is even a certain amount of salable good will, as is made familiar to us by English law and literature as well as by an occasional case in our own reports. *Smith* v. *Bergengren*, 153 Mass. 236.

The respondent demanded a finding or ruling that the petitioner's business was not decreased in value by the carrying out of the act, because of the figures given for his income in 1894 and 1895, and later. But the commission may have found and, for all that we can see, rightly, that the diminution of

584      EARLE v. COMMONWEALTH.      [180

income before April 1, 1895, was due to precautions taken by the petitioner in anticipation of the change, and we are unable to say that the respondent's request should have been granted.

The respondent next contends that the measure of damages is the difference in the market value of the business between April 1, 1895, and after the act was carried out. This recurs to the notion that the only interests which the law will recognize are salable, and that the petitioner can recover only for such good will as might have been transferred for cash. The word "owning" in the statute is invoked. We shall not speculate whether ownership of an equitable life estate would be denied to a legatee deprived of the right of alienation. It is enough to say that, if the petitioner's business is within the protection of the act and "is decreased in value," damages are to be paid for "such injury," that is to say, for the actual decrease in value of that business, not for the decrease in the value of such elements in it, only, as admitted of being sold. There is no practical difficulty in the way of carrying out the statute according to its meaning. The money value of the petitioner's business could be estimated, even though absolutely personal to himself.

But the rule suggested by the petitioner also seems to us unsafe on the facts before us. The damage theoretically would be the difference in value between the business as it had been and as it was left. Perhaps it might be reached by taking the difference in value between the business carried on as it was in West Boylston and a similar business carried on by the petitioner in the nearest available place, bearing in mind the effect of requiring all West Boylston patients to move. It may be that the commission will find as a practical matter that the method suggested by the petitioner is as near as can be got to the thing to be determined, but as the case stands we do not feel warranted in adopting it. The commission has not said that it could not make an estimate on more obviously correct principles. It has confined itself to finding the damages according to the rules suggested on the two sides.

A request for a ruling that what the petitioner had earned as a specialist since his abandonment of his general practice could not be considered, went too far. Undoubtedly the evidence was not very important, and probably it was not regarded as being so.        *Report recommitted.*