# LORE ET UX. *v.* BOARD OF PUBLIC WORKS OF STATE OF MARYLAND

[No. 130, September Term, 1975.]

*Decided April 7, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■ O'DONNELL, JJ.

*Oliver R. Guyther* for appellants.

*Glenn B. Harten, Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Nolan H. Rogers, Special Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 361 *infra.*

In this case we are called upon to decide whether landowners whose property is taken through the exercise of the State's power of eminent domain are entitled to interest on the compensatory award, to be computed from the date of the entry of the judgment *nisi* on the inquisition to the time of payment. We conclude that they are.

The relevant facts are not in dispute and may be related in but one paragraph. G. I. Rupert Lore and Dora D. Lore, the petitioners, owned 92 acres of land located near the St. Mary's River in St. Mary's City, St. Mary's County. In order to obtain that realty for the St. Mary's City Commission,[1] the respondent Board of Public Works of the State of Maryland, utilizing the authority granted it by Maryland Code (1957, 1975 Repl. Vol.), Art. 78A, § 9A, filed a petition in the Circuit Court for St. Mary's County to acquire the property through condemnation. Following a two-day trial, the jury, on September 24, 1974, awarded the owners $275,500 as compensation for the taking. On the same day the clerk of the court, at the direction of Judge Joseph A.

---

1. In 1966 the General Assembly established the St. Mary's City Commission as a state agency to preserve and develop Maryland's first capital city as an historic site. Maryland Code (1957, 1971 Repl. Vol.), Art. 41, §§ 365-74. It is in connection with implementing this legislative directive that the land which is the subject of this litigation is desired by the State.

Mattingly, who presided at the trial, entered the following notation on the docket: "Judgment Nisi in the amount of $275,500.00, in favor of [G. I. Rupert Lore and Dora D. Lore] and against the [State], with costs, and interest from date." Final judgment was entered on September 30. Although authorized to abandon the condemnation proceeding at any time prior to the lapse of 120 days following entry of the final judgment, Code (1974), Real Property Article, § 12-109, the State elected not to do so. Subsequently, on February 7, 1975, the respondent paid the Lores $275,000 of the award, with the $500 balance being paid on February 21 of that year. Claiming that they are entitled to receive interest on the inquisition award from the date the judgment *nisi* was entered until that sum was paid, the petitioners, on February 28, 1975, filed a motion to require the State to remit the additional amount.[2]

Preliminarily, we take note of the basic principle of constitutional law that the power of eminent domain adheres to sovereignty and requires no constitutional authority for its existence. *Riden v. Phila., B. & W. R. R. Co.*, 182 Md. 336, 339, 35 A. 2d 99 (1943). This power, however, is limited by the Constitution of Maryland, Article III, §§ 40-40D, and the Fifth Amendment of the United States Constitution as extended to the states through the Fourteenth Amendment, *Chicago, B. & Q. R. R. v. Chicago*, 166 U. S. 226, 241, 17 S. Ct. 581, 586, 41 L. Ed. 979 (1897), both of which enjoin the taking of private property for public use without the payment of just compensation.[3] While these constitutional provisions prevent the State from remitting anything less than "just compensation," they do not prohibit the Legislature from deciding to pay more than

---

2. Since the State does not question the procedure utilized by the property owner to litigate this issue and it is not jurisdictional, we do not pass upon the propriety of it.

3. Court decisions throughout the nation, as well as in this State, have generally equated just compensation with fair market value. *See, e.g.,* State Roads Comm. v. Warriner, 211 Md. 480, 485, 128 A. 2d 248 (1957); State v. South Hackensack, 65 N. J. 377, 322 A. 2d 818, 821 (1974). This interpretation has received legislative approval in Maryland. *See* Code (1974), Real Property Article, §§ 12-104, -105.

that minimum. *Joslin Mfg. Co. v. Providence*, 262 U. S. 668, 676-77, 43 S. Ct. 684, 688, 67 L. Ed. 1167 (1923); *Earle v. Commonwealth*, 180 Mass. 579, 583, 63 N. E. 10 (1902).

Having concluded that in condemnation cases the General Assembly may grant property owners more than the constitutional minimum of "just compensation," we must ask whether the Maryland Legislature has done so in regard to takings such as the one now before us and, if so, whether interest on the award is one of the additional elements of damage it has authorized. We think it clear that when in 1963, as a result of an extensive study undertaken at the direction of its Legislative Council, the General Assembly completely revised this State's law pertaining to eminent domain, it specifically provided that, in addition to the payment of "just compensation," other elements of damage should be included in the award to be paid the property owner.[4] *See generally* Baker & Altfeld, *Maryland's New Condemnation Code*, 23 Md. L. Rev. 309 (1963). It seems equally obvious to us that one of the extra elements of damage this revision authorizes to be disbursed to property owners, is the very one at issue here — interest on the award, computed from the date of the entry of the judgment *nisi* to the time the judgment is satisfied. We say this because one section of the 1963 revision, now codified as Code (1974), Real Property Article, § 12-101, makes it clear that the award to be made should reflect not only what is specifically mentioned by the General Assembly but also what is included in Subtitle U of Chapter 1100 of the Maryland Rules; and a reading of Subtitle U makes it apparent that interest on the award should be paid. Support for the former proposition may be found in the very words the General Assembly used in § 12-101: "All proceedings for the acquisition of private property for public use by condemnation are governed by the provisions of this title

---

4. Examples of these additional elements of damage are found in Code (1974), Real Property Article, §§ 12-202 (additional compensation to owner-occupants), 12-204 (additional payment to tenants and certain other occupants), 12-205 (moving and relocation expenses), and 12-206 (advisory services).

*and of Subtitle U of the Maryland Rules."* (Emphasis added.) The rationale for saying that Subtitle U requires interest to be paid on an award was succinctly put by Judge Horney for this Court in *Hammond v. State Roads Comm.,* 241 Md. 514, 517, 217 A. 2d 258 (1966), where he said:

> "In eminent domain cases, Maryland Rule U19 a requires the trier of fact to render a special verdict in the form of an inquisition, which, pursuant to subsection g of U19, should set forth the amount of damages. Rule U21 a provides for the entry of a judgment *nisi* for the amount of the damages awarded and the clerk of court, pursuant to subsection d of U21, is directed to enter a final judgment as of course three days later. Rule 1 a 1 states that the rules in Chapter 1 and 100 through 600, except as otherwise expressly provided or necessarily implied, apply to the special proceedings dealt with in Chapter 1100, of which 'Subtitle U. Eminent Domain' is a part. There is nothing to indicate that the general rules of procedure are not applicable to condemnation proceedings. Rule 642 (Interest on Judgment) provides that a judgment *nisi* entered by the court following the return of a special verdict by a jury pursuant to Rule 560 (Special Verdict) or trial by the court without a jury pursuant to Rule 564 (Trial by Court) shall be so entered 'as to carry interest from the date of the entry of judgment *nisi.*' " [5]

Accordingly, we hold that by legislative mandate interest on the jury's inquisition award, accounting from the date of the entry of the judgment *nisi* on September 24, 1974, until

---

5. Since Hammond v. State Roads Comm., 241 Md. 514, 217 A. 2d 258 (1966), unlike the present case, concerned interest on the difference between the amount initially paid into court in connection with a "quick take" of property for State highway purposes, as authorized by Article III, § 40B, of the Constitution of Maryland, and the eventual jury award, the issue presented in the case at bar was not then before the Court. The question of payment of interest when there is a "quick take" is now controlled by a separate statutory section. *See* Code (1974), Real Property Article, § 12-106 (c).

it was satisfied, became a part of the compensation required to be paid for the taking.[6]

> Order of the Circuit Court for St. Mary's County reversed and case remanded to that court for the signing of an order directing the payment of interest.
> Costs to be paid by the State of Maryland.

Murphy, C. J., dissenting:

The Court holds that landowners whose property is taken through the exercise of the State's power of eminent domain, whether by conventional or quick-take procedures, and without regard to the actual date of taking, are entitled to interest on the compensatory award to be computed from the date of the entry of the judgment *nisi* on the inquisition to the date of payment. I respectfully dissent from the application of this holding to the conventional condemnation award involved in this case.

The majority charts a course through the statutes and rules to reach what appears to be, at first blush, a straightforward result. However, the bedrock upon which I believe it founders is that, in the absence of payment of the judgment by the Board, there was no actual "taking" within the meaning of the eminent domain statutes, Maryland Code (1974), Title 12 of the Real Property Article. Consequently, there was no basis for awarding interest, since the property owners were not deprived of the beneficial use of their

---

6. Since we hold that the Legislature has effectively provided for the payment of interest on the award, we need not decide whether interest is otherwise required to be paid.

We mention that Code (1974), Real Property Article, § 12-212 provides that "[t]his subtitle may not be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of value or of damage not in existence prior to January 2, 1971." Since the provisions with which we are concerned, § 12-101 and Maryland Rule U, in their present form, antedate that point in time, we are not in this case confronted with the prohibition of § 12-212.

property from the date of inquisition until the time payment was made. On the contrary, the record affirmatively shows that the property owners continued to receive rents from the tenants occupying the property until the judgment was paid, and that the State did not receive any benefit from the property until after it had satisfied the judgment and taken possession.

That it was not the purpose of the statute to authorize the payment of interest on compensatory awards prior to a "taking" is indicated by the framework and provisions of Title 12 of the Real Property Article. That title plainly distinguishes the eminent domain procedures used by the Board of Public Works in this case from the "quick-take" procedures authorized by Article III, §§ 40A-40D of the Constitution of Maryland, which permit payment by the State of the estimated value of the property at the commencement of the proceedings and the right to take immediate possession. Section 12-102 specifies when property is deemed to be "taken" under each procedure. In a "quick take," the property can be taken before trial. See § 12-102 (1). In the conventional condemnation proceeding involved in this case, the property is not deemed "taken" until "the . . . [State] pays the judgment and costs pursuant to Subtitle U of the Maryland Rules." § 12-102 (2). Nor does the right to possession or title vest in the State until the judgment and costs are paid. § 12-108 (a). Section 12-106 (b), in listing the "costs" to be included in an eminent domain award, does not include interest; rather, § 12-106 (c), entitled *"Interest on award,"* clearly applies only to "quick-take" cases:

> "In proceeding under Article III of the Constitution of the state, or any amendment to it, the . . . [State] shall pay interest . . . on any difference between the amount of money initially paid into court for the use of the defendant and the jury award as stated in the inquisition, . . . [from] the date the money was paid into court . . . [to] the date of the inquisition or final judgment, whichever is later."

The limitation of interest payments to "quick-take" cases, viewed in conjunction with the State's right under § 12-109 and Rule U26 to abandon the proceeding within 120 days from the date of final judgment, and the fact that in this case there was neither a "taking" nor a vesting of title in the State until after the judgment and costs were paid, plainly indicates that granting interest in these circumstances is improper.

Moreover, it is the general rule that one whose property is being condemned is not entitled to interest during the time he retains possession or use thereof. See 27 Am. Jur. 2d *Eminent Domain* § 303 (1966). Dicta in *Schreiber v. Baltimore City*, 248 Md. 425, 236 A. 2d 732 (1968) is supportive of the general rule. In that case, the property owners claimed interest on a condemnation award from the date of judgment *nisi* to the date of closing. The lower court concluded that the property owners were not entitled to interest on the judgment and they appealed. While the appeal was dismissed on the ground that it had been taken before the entry of final judgment, we stated that had we decided the case on its merits, "our conclusion would not be different from that of . . . [the trial judge]." 248 Md. at 428.

The majority's reliance upon *Hammond v. State Roads Comm.*, 241 Md. 514, 217 A. 2d 258 (1966), to support its holding that the Maryland Rules require interest to be paid is misplaced. That case involved a "quick-take" proceeding by the State Roads Commission, where "*possession had already been taken by the State* and payment of the balance of the judgment was not paid promptly." (emphasis added) 241 Md. at 518. As *Hammond* recognized, the weight of authority supports the payment of interest on a condemnation award where payment is withheld beyond the time the property is actually taken. In the present case, there had been no taking during the interest accrual period, since the Board had not yet paid the judgment and costs. See § 12-102 (2). The property owners continued to collect the rents from the property, and enjoyed its other benefits. Thus, Rule 642 should not be applied in conjunction with Subtitle U where the rationale for its application does not

exist. Indeed, *Hammond* itself recognized that the payment of interest accruing prior to the taking of property was properly disallowed in Maryland. *See* 241 Md. at 520-21, distinguishing *Norris v. Mayor and City Council of Baltimore,* 44 Md. 598 (1876).

For the reasons stated, I would affirm the judgment of the lower court denying the claim of the property owners for the payment of interest on the compensatory award.