MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
KELSO CORPORATION ET AL.

[No. 158, September Term, 1981.]

*Decided September 3, 1982.*

*Motion for reconsideration filed September 16, 1982; denied October 4, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Richard K. Jacobsen, Chief City Solicitor,* with whom were *Benjamin L. Brown, City Solicitor,* and *Ambrose T. Hartman, Deputy City Solicitor,* on the brief, for appellant.

*Jonathan A. Azrael,* with whom were *Edward Azrael* and *Azrael & Gann* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

Once again we are called upon to resolve questions regarding the computation of interest in a quick-take condemnation proceeding. *See* Md. Const., art. III, §§ 40A-C. Specifically we are asked to decide (1) whether the principal upon which the condemning authority is required to pay postjudgment interest, *see* Md. Rule 642, is the unpaid balance of the quick-take judgment plus prejudgment interest under Md. Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-106 (c),[1] or merely upon the unpaid balance of the quick-take judgment, and (2) whether postjudgment interest under Rule 642 should be paid after July 1, 1980 at a rate of six percent or 10 percent per annum.[2] The Court of Common Pleas of Baltimore (Sklar, J.) ordered that postjudgment interest be paid on the balance of the quick-take judgment plus § 12-106 (c) prejudgment interest and that this postjudgment interest be paid at a rate of 10 percent per annum after July 1, 1980. We shall affirm.

---

1. Sec. 12-106 (c) mandates that the condemnor pay interest at a rate of six percent per annum on the difference between the quick-take deposit and the condemnation award from the date of deposit to the date of judgment.

2. Interest under Rule 642 is to be paid at the "legal rate." Northwestern National Insurance Co. v. William G. Wetherall, Inc., 272 Md. 642, 658, 325 A.2d 869, 878 (1974). The legislature, by 1980 Md. Laws, ch. 798, effective July 1, 1980, changed the legal rate of interest from six percent per annum, *see* Md. Const., art. III, § 57, to 10 percent per annum (with certain exceptions not relevant here).

In 1972 and 1973 the City of Baltimore filed quick-take condemnation proceedings against various properties owned by the appellee and paid $80,499, the appraised value of the properties, into court. The cases were consolidated and tried as one case. On September 17, 1979 a judgment *nisi* was granted in the amount of $261,275. It became a final judgment on September 20. Over a year later, in January, 1981, the City paid appellee the difference between the quick-take deposit and the final judgment ($180,776) and interest on that difference at six percent per annum, from the date of the quick-take deposit until the date of payment ($82,825.31), resulting in a total payment of $263,601.31. The appellee accepted this payment "without prejudice and reserving its right to claim additional interest."

Subsequently, the appellee filed a motion in the condemnation proceeding claiming that he was entitled, not only to (1) the difference between the quick-take deposit and the final judgment, and interest, at six percent per annum, on that difference from the date of the quick-take deposit until the date of judgment, pursuant to § 12-106 (c), but also to (2) interest, at six percent per annum, on the above *sum* from the date of the judgment to July 1, 1980, and (3) to interest, at 10 percent per annum, on the *sum* in (1) above from July 1, 1980 until paid. The trial court granted appellee's motion and the City appealed to the Court of Special Appeals. The appellee petitioned for a writ of certiorari, and we granted it to consider these two issues of public importance.

## (1)

The first issue is the determination of the principal upon which the appellee is entitled to postjudgment interest under Md. Rule 642. It is clear that the City owed appellee $180,776 (the difference between the quick-take deposit and the final judgment), and it is clear that the City owed appellee prejudgment interest at six percent per annum on that difference from the date the deposit was made until the date of the judgment, *see* Real Property Article, § 12-106 (c),

resulting in a total of approximately $250,000. It is also clear that the City is obligated to pay appellee interest, at the legal rate, from the date of the judgment *nisi* until it is paid. *See* Md. Rule 642. The issue for our consideration is whether this interest is to be paid on the balance of the quick-take judgment ($180,776), or on that amount plus § 12-106 (c) prejudgment interest (approximately $250,000). We agree with the trial court and conclude it is to be paid on the latter.

The appellant contends that the trial court erred in requiring the City to pay Rule 642 postjudgment interest on the unpaid balance of the quick-take judgment plus § 12-106 (c) interest, because it was, in effect, ordering the City to pay *compound* interest, which we have said is not allowed by law, *see Walker v. Acting Director,* 284 Md. 357, 367, 396 A.2d 262, 267 (1979). In its decision, the trial court relied on *Hammond v. State Roads Commission,* 241 Md. 514, 217 A.2d 258 (1966), and appellant argues that it was in error to do so. Referring to *Hammond,* the appellant states that

> "the Court of Appeals held that the property owner was entitled to interest on the unpaid balance of a condemnation judgment from the date of taking to the time of payment and not merely to the time of judgment nisi as required by Section 7(c) Article 33A . . ., the former 'interest on award' statute, relied upon by the State."

The appellant is incorrect in his assessment of *Hammond.* In *Hammond,* a quick-take case, the condemnation award included "any and all interest that had accrued from the time that possession had been taken of the property." *Id.* at 516, 217 A.2d at 259. The condemnees in that case argued that they were entitled to postjudgment interest on the unpaid balance of the judgment, which included any and all prejudgment interest. We held that they were entitled to interest on the unpaid judgment from the time of the judgment *nisi* to the date on which the wrongfully held interest was finally paid. *Id.* at 521, 217 A.2d at 262. Similarly, the appellee in this case should be paid interest on the unpaid balance of the judgment plus § 12-106 (c) prejudgment inter-

est. Although the judgment in the instant case did not include "any and all prejudgment interest" as it did in *Hammond,* such interest accrued here as a matter of law by operation of § 12-106 (c) and became a part of the judgment because the legislature has determined that § 12-106 (c) prejudgment interest is part of the compensation required to be paid for the taking. *Cf. Lore v. State Board of Public Works,* 277 Md. 356, 360-61, 354 A.2d 812, 815 (1976) (legislature has determined that Md. Rule 642 postjudgment interest is part of the compensation that is to be paid for the taking in a condemnation proceeding). It is irrelevant whether the prejudgment interest was explicitly included in the judgment or accrued as a matter of law.

We made it clear in *I. W. Berman Properties v. Porter Brothers, Inc.,* 276 Md. 1, 344 A.2d 65 (1975), that an award of postjudgment interest, under Rule 642, on a judgment that included prejudgment interest, did not constitute compound interest. *Id.* at 24, 344 A.2d at 79. The purpose of Rule 642 is to compensate the judgment creditor for the loss of the monies due and owing to him by the judgment debtor from the time the judgment is entered until it is paid. *Id.* Although the court in the instant case did not explicitly include § 12-106 (c) prejudgment interest in its judgment as the lower court in *Berman* explicitly included prejudgment interest in its judgment,[3] such interest accrued as a matter of law by operation of § 12-106 (c) and became part of the judgment as noted above. *Cf. Lore v. State Board of Public Works, supra.* It is irrelevant whether the prejudgment interest is judicially imposed, as in *Berman,* or statutorily imposed, as here. The balance of the quick-take judgment plus § 12-106 (c) interest is the amount that is due and owing to the condemnee at the time the judgment is entered. Any delay in paying the judgment after it is entered results in a loss of the use of those monies during the delay in

---

**3.** In *Berman,* plaintiff sued defendant for the breach of a construction contract. The trial court held for the plaintiff and entered a judgment for the balance due on the contract plus interest, at six percent per annum, on the balance from the date it had been due under the contract to the date of judgment. 276 Md. at 6, 344 A.2d at 69.

payment, for which the condemnee must be compensated pursuant to Rule 642. Although the appellant disputes the lower court's characterization of § 12-106 (c) interest as "prejudgment interest," it is a distinction without a difference. "The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds." 276 Md. at 24, 344 A.2d at 79. The purpose of § 12-106 (c) interest is exactly the same as that of prejudgment interest because the value of the condemned property is determined as of the time of the taking, which, in a quick-take case, occurs before trial and the resulting judgment. See Real Property Article, §§ 12-102 and 12-103.[4] This section compensates the condemnee for the loss of the value of the land from the time of the taking until a judgment, which conclusively determines its value at the time it was taken, is entered. Thus, postjudgment interest, under Rule 642, in a quick-take case should be calculated upon the unpaid balance of the final judgment plus § 12-106 (c) prejudgment interest.

(2)

The second issue involves what rate of interest is to be paid on the judgment after July 1, 1980. The appellee is entitled to interest on the amount of the judgment from the date of the judgment *nisi* until it is paid. Md. Rule 642. The rate of interest to be paid under Rule 642 is the legal rate. *Northwestern National Insurance Co. v. William G. Wetherall, Inc.,* 272 Md. 642, 658, 325 A.2d 869, 878 (1974). The legislature, effective July 1, 1980, changed "the legal rate of interest on a judgment" from six percent per annum, *see* Md. Const., art. III, § 57, to 10 percent per annum (with certain exceptions not relevant here). 1980 Md. Laws, ch. 798; *see* Code (1974, 1980 Repl. Vol., 1981 Cum. Supp.),

---

4. In the usual condemnation case, however, the taking occurs after trial and after compensation has been paid. Real Property Art., §§ 12-102 and 12-103.

Courts & Judicial Proceedings Article, § 11-107 (a). Appellant contends that, because the statute does not state that it applies to all outstanding judgments, it should be construed to apply only to judgments entered after July 1, 1980. Appellee argues that the legislature intended that it apply after that date to all outstanding judgments whenever entered. The appellant replies that the appellee's construction would result in a retroactive application of the law.

In construing § 11-107 (a) this Court must

"acertain and effectuate the actual intent of the Legislature. In determining this legislative intent, the court may consider the statute's legislative history and should construe together and harmonize all statutory provisions relating to the same subject matter. In addition, the court must consider the statute's purpose." *Montgomery v. State,* 292 Md. 155, 159, 438 A.2d 490, 491 (1981) (citing cases).

The statute addresses "the legal rate of interest on a judgment." Does "judgment" in that context mean all outstanding judgments or only those outstanding judgments entered after the effective date of the statute? We think that the statute is not ambiguous and that the ordinary meaning of "judgment" is any outstanding judgment regardless of when it was entered. To the extent the meaning of "judgment" is ambiguous, however, the purpose of the statute clearly shows that it was intended to apply to all outstanding judgments regardless of when they were entered. As we noted above, the purpose of postjudgment interest is to compensate the judgment creditor for the loss of the monies that are due and owing to him from the time the judgment is entered until it is paid. The change in the interest rate, from six to 10 percent per annum, recognized that the old rate no longer fairly compensated judgment creditors.

Applying the statute to all outstanding judgments accomplishes the legislative purpose. It compensates the judgment creditor at a rate of return deemed fair by the legislature on the monies owed to him. Applying the statute only to those judgments entered after its effective date fails to accomplish

the legislative purpose. Only those whose judgments were entered after July 1, 1980 would be fairly compensated. Those whose judgments were entered before that date would not be fairly compensated for the loss, after July 1, 1980, of the use of the monies owed to them, and those judgment debtors would receive an unfair windfall. Even if these judgment debtors relied on the old rate, they had no right to do so. Furthermore, those judgment debtors who delay in satisfying their judgments because they are receiving a higher rate of return on the monies than they will pay in postjudgment interest would be encouraged to delay satisfying the judgments further by the resulting disparity between the two rates of return. Requiring them to pay interest on the judgment at a rate of 10 percent per annum will reduce this incentive and may encourage the satisfaction of judgments entered before July 1, 1980.

Most other state courts that have dealt with this issue have reached the same conclusion as we do here.[5] Some states, however, have reached a contrary result.[6] *See generally* Annot., 4 A.L.R.2d 932 (1949); 45 Am.Jur.2d, *Interest and Usury,* § 11 (1969). The basis of the argument that the new interest rate should not apply to unsatisfied judgments entered before the effective date of the statutory change is that a judgment is a contract or is in the nature of a contract, that such vested rights may not be impaired, and

---

**5.** *See* (among the more recent cases) McBride v. Superior Court of Maricopa Co., 130 Ariz. 193, 635 P.2d 178 (1981); Senn v. Commerce-Manchester Bank, 603 S.W.2d 551 (Mo. 1980); Ridge v. Ridge, 572 S.W.2d 859 (Ky. 1978); Ferry v. Ferry, 201 Neb. 595, 271 N.W.2d 450 (1978) (interest on unpaid child support); Porter v. Clerk of Superior Court, 368 Mass. 116, 330 N.E.2d 206 (1975); Noe v. City of Chicago, 56 Ill.2d 346, 307 N.E.2d 376 (1974); Ferris v. First National Bank & Trust Co. of Racine, 96 Wis.2d 476, 292 N.W.2d 357 (Ct. App. 1980); House v. Riemann, 48 App. Div. 2d 469, 369 N.Y.S.2d 843 (1975).

**6.** *See* (among the more recent cases) Coastal Industrial Water Authority v. Trinity Portland, 563 S.W.2d 916 (Tex. 1978) (*but see* Earl Hayes Rents Cars v. City of Houston, 557 S.W.2d 316 (Tex. Civ. App. 1977, writ ref'd n.r.e.) (statute increasing prejudgment interest will be applied in pending suits at old rate until date of change and then at new rate thereafter)); Bartlett v. Heersche, 209 Kan. 369, 496 P.2d 1314 (1972) (three justices dissenting); Sunray DX Oil Co. v. Great Lakes Carbon Corp., 476 P.2d 329 (Okla. 1970) (supp. opinion on reh. by Berry, V.C.J.); Department of Transportation v. Delta Machine Products Co., 162 Ga. App. 252, 291 S.E.2d 104 (1982); Winzer v. Lewis, 251 So.2d 650 (La. App. 1971).

that the rights and liabilities of the parties are fixed as of the time the judgment is entered. The Supreme Court laid this argument to rest in *Morley v. Lake Shore Ry.,* 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925 (1892), where it held that a New York statute which changed the interest rate as to unsatisfied judgments entered before the change did not violate the contract clause of article I, § 10 of the federal constitution. The Court held that the right to interest on a judgment was a matter of legislative discretion, not of contract. It pointed out that the characteristics of a contract, a meeting of the minds, consideration, mutuality, and assent of the parties, were absent.[7] *Id.* at 169-70, 13 S.Ct. at 56-57, 36 L.Ed. at 929.

We find persuasive the reasoning of the Supreme Court and the decisions of courts in other states, *see* note 4, *supra,* which have held that a change in the interest rate on judgments applies from the date of the change to all outstanding judgments. The right of a judgment creditor to interest on a judgment did not exist at common law. *See Walker v. Acting Director,* 284 Md. at 367, 396 A.2d at 267. It is a matter of legislative grace, the purpose of which is to compensate the judgment creditor for the damages sustained by non-payment of the judgment. Just as the judgment creditor has no right to interest except that which the legislature decrees, the judgment debtor has no right to a limitation of the interest rate to be applied in the future, except that which is decreed by the legislature. Should the legislature deem it wise to change the interest rate from time to time in order to fairly compensate judgment creditors for the damages they sustain because of the non-payment of judgments,

---

**7.** *See also* Funkhouser v. Preston Co., 290 U.S. 163, 169, 54 S.Ct. 134, 136, 78 L.Ed. 243, 246 (1933) and Missouri & Arkansas Co. v. Sebastian County, 249 U.S. 170, 172-73, 39 S.Ct. 202, 203, 63 L.Ed. 538, 542-43 (1919), citing *Morley* with approval. *But see* Texas & Pacific Ry. v. Anderson, 149 U.S. 237, 13 S.Ct. 843, 37 L.Ed. 717 (1893), where the Court held that interest on a judgment was to be controlled by the interest rate which was in effect at the time the judgment was entered, notwithstanding a subsequent change in the rate before the judgment was satisfied. The Court, however, was apparently applying Texas law. Chicago, R.I. & P. R.R. v. Chicago, B. & Q. R.R., 55 F.R.D. 209, 210 (N.D. Ill. 1972) ("[*Anderson*] is at best ambiguous since there is no discussion of whether the decision was based upon a construction of federal or of Texas law.").

the new rate will apply from the effective date of the change to all outstanding judgments.

The appellant is correct in his contention that the presumed intent of the legislature, absent contrary language or other circumstances, is that statutes are to be applied prospectively rather than retroactively. *See State Commission on Human Relations v. Amecon Division of Litton Systems, Inc.,* 278 Md. 120, 123-24, 360 A.2d 1, 4 (1976). Our construction of this statute is not, as the appellant attempts to characterize it, a retroactive application. A retroactive application would not only apply the 10 percent interest rate to all outstanding judgments, but the 10 percent rate would run *from the date of the judgment,* even if it was entered before July 1, 1980. Ours is a prospective application of the *new rate,* i.e., the new rate applies, after July 1, 1980, to all outstanding judgments. Before that date interest will accrue at the old rate.

*Order affirmed.*
*Costs to be paid by appellant.*