467 A.2d 1032

William I. KING

v.

STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION, Acting for and on behalf of the State of Maryland.

No. 28, Sept. Term, 1983.

Court of Appeals of Maryland.

Dec. 6, 1983.

82

R. Edwin Brown, Rockville (John R. Clapp and Brown & Sturm, Rockville, on the brief), for appellant.

Frank W. Wilson, Sp. Counsel, Poolesville (Stephen H. Sachs, Atty. Gen. and Nolan H. Rogers, Asst. Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

The primary issue in this "quick-take" condemnation case is whether the constitutional requirement that the State pay "just compensation" for private property taken for public use includes, as an integral part thereof, interest at the prevailing market rate from the time possession of the property is taken to the time of payment of the condemnation award.

I

■ Both the Fifth Amendment to the Federal Constitution and Article III, § 40 of the Constitution of Maryland prohibit the taking of private property for public use without the payment of just compensation to the property owner.[1] The Fifth Amendment protection is applicable to the states through the Fourteenth Amendment. *Chicago, B. & Q.R.R. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick,* 286 Md. 1, 405 A.2d 241 (1979). Decisions of the Supreme Court

---

1. The Fifth Amendment provides, in pertinent part, "nor shall private property be taken for public use, without just compensation." Section 40 of Article III of the Maryland Constitution provides:

 "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

interpreting the Fifth Amendment's just compensation clause are therefore practically direct authority for our interpretation of the identical provision in Art. III, § 40 of the Constitution of Maryland. *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A.2d 748 (1974). In this regard, "just compensation" for the taking of property means the full monetary equivalent of the property taken; the property owner is to be put in the same position monetarily as he would have occupied if his property had not been taken. *Almota Farmers Elevator & Whse Co. v. U.S.,* 409 U.S. 470, 473–74, 93 S.Ct. 791, 794–95, 35 L.Ed.2d 1 (1973); *United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943); *Dodson v. Anne Arundel County,* 294 Md. 490, 494, 451 A.2d 317 (1982).[2]

## II

A distillation of the pertinent principles pertaining to the two basic methods of property condemnation is essential to a proper understanding of the issue now before us.

### (A)

#### Conventional Condemnation

In conventional condemnation cases, the condemnor files a condemnation petition pursuant to the provisions of Subtitle U (Eminent Domain) of the Maryland Rules. No right to possession of the property is obtained by the condemning authority until it pays the full amount of the condemnation judgment, plus costs. *Walker v. Acting Di-*

---

2. Maryland Code (1974, 1981 Repl.Vol.), § 12–104 of the Real Property Article provides in pertinent part:
 "(a) *For taking entire tract.*—The damages to be awarded for the taking of land is its fair market value.
 (b) *Where part of tract taken.*—The damages to be awarded where land, or any part of it, is taken is the fair market value of the part taken, but not less than the actual value of the part taken plus any severance or resulting damages to the remaining land by reason of the taking and of future use by the plaintiff of the part taken. The severance or resulting damages shall be diminished to the extent of the value of the special (particular) benefits to the remainder arising from the plaintiff's future use of the part taken."

*rector,* 284 Md. 357, 361, 396 A.2d 262 (1979); Maryland Code (1974, 1981 Repl.Vol.), § 12–102(2) of the Real Property Article; Maryland Rule U22. While the property owner is not entitled to prejudgment interest for the period between the filing of the petition and the entry of judgment upon the inquisition, he is entitled to receive post-judgment interest on the award at the legal rate from the date of entry of the judgment nisi to the date the award is actually paid. *Dodson v. Anne Arundel County,* 294 Md. 490, 451 A.2d 317 (1982); *Lore v. Board of Public Works,* 277 Md. 356, 354 A.2d 812 (1976); Maryland Rule 642. Post-judgment interest at the legal rate is paid in conventional condemnation cases as a matter of legislative grace, and not as of constitutional right, since in such cases interest is not an element of the constitutionally mandated just compensation formulation; rather, it is an element of damages, additional to the just compensation required by the constitution, authorized by statute to compensate the condemnee for the loss of the monies due and owing to him from the date the condemnation judgment is entered until it is paid. *Dodson, supra,* 294 Md. at 497, 451 A.2d 317; *City of Baltimore v. Kelso Corp.,* 294 Md. 267, 449 A.2d 406 (1982); *Walker, supra; Lore, supra.*

The legal rate of interest, as prescribed by § 57 of Art. III of the Constitution of Maryland, is six percent per annum "unless otherwise provided by the General Assembly." By ch. 798 of the Acts of 1980, now codified as Code (1980, 1983 Cum.Supp.), § 11–107 of the Courts and Judicial Proceedings Article, the legal rate of interest to be paid on most judgments, including condemnation judgments, was increased to ten percent, effective July 1, 1980; this rate applies to all outstanding judgments and runs from that date until the judgment is satisfied. *Kelso, supra.*

(B)

*Quick-take Condemnation*

■ In quick-take cases, the condemning authority takes possession of the property prior to trial upon payment into

court of its estimate of the value of the property taken. The condemnee may immediately withdraw the amount of the quick-take deposit and may also recover the amount of any deficiency where the value of the property is later determined at trial to be greater than the amount initially deposited by the condemnor. In addition, the condemnor is required by § 12–106(c) of the Real Property Article to "pay interest at the rate of 6 percent per annum on any difference between the amount of money initially paid into court for the use of the defendant and the jury award as stated in the inquisition, from the date the money was paid into court to the date of the inquisition or final judgment, whichever date is later." The prejudgment interest authorized by § 12–106(c) in quick-take cases is not a matter of legislative grace, as with the post-judgment interest authorized in conventional condemnation cases. Rather, it is a part of the just compensation required by the constitution to be paid for the taking; it is designed to pay the condemnee the "time value" of the money he should have received for his property on the day it was taken. *Kelso, supra,* 294 Md. at 271, 449 A.2d 406; *Hammond v. State Roads Comm.,* 241 Md. 514, 519, 217 A.2d 258 (1966). In other words, interest in quick-take cases, unlike interest in conventional condemnation cases, is a constitutionally required element of just compensation and no specific statutory authority is required for its payment. Our cases, citing extensive Supreme Court authority, have repeatedly recognized the principle that the constitutional requirement of just compensation in quick-take cases entitles the property owner, as a matter of constitutional right, to recover interest from the date of the taking to the date of payment. *Kelso, supra,* 294 Md. at 271, 449 A.2d 406; *Walker, supra,* 284 Md. at 361, 396 A.2d 262; *Hammond, supra,* 241 Md. at 519, 217 A.2d 258.

"Quick-take" condemnation proceedings are authorized in limited circumstances by §§ 40A through 40C of Art. III of the Constitution of Maryland. Section 40B, applicable in this case, authorizes the General Assembly to provide by law

for the State Roads Commission to take immediate posses-
sion of property needed for State highway purposes

"upon payment therefor to the owner or owners thereof
..., or into Court, [of] such amount as said State Roads
Commission shall estimate to be of the fair value of said
property, provided such legislation also requires the pay-
ment of any further sum that may subsequently be
awarded by a jury."

The constitutional provision has been implemented by statu-
tory provisions contained in Code (1977), Title 8 of the
Transportation Article.

### III

Utilizing its quick-take authority, the State Roads Com-
mission (the Commission) filed a petition on April 26, 1977 to
take immediate possession of the appellant King's property
for highway purposes. The Commission estimated the value
of the property at $16,875 and paid that sum into court.
Over three years later, the case came to trial before a jury in
the Circuit Court for Montgomery County which, on October
20, 1980, determined the value of the land taken and the
damage to the remainder to be $64,693.50, resulting in a
deficiency of $47,818.50. On January 13, 1981, the Commis-
sion paid into court $59,284.31, representing the amount of
the deficiency, plus six percent interest from the date of the
taking on April 26, 1977 to the date of payment of the
condemnation award. King withdrew these funds shortly
thereafter.

On February 6, 1981, King filed a motion with the court
seeking "supplemental interest." He claimed that the six
percent interest rate authorized by § 12–106(c) was uncon-
stitutional in the present economy, as it deprived him of part
of the constitutionally mandated "just compensation" for
the taking of his property. King asked the court to conduct
a separate hearing on the issue of the constitutionality of
the six percent interest rate set forth in § 12–106(c), and to
pass an order awarding interest on the deficiency at a rate
which would fulfill the constitutional requirement of just

compensation. The Commission opposed the motion, claiming that the § 12–106(c) six percent rate was constitutional. It also contended that the constitutional issue had been waived since King had failed to raise the question at trial.

The court (Bell, J.) denied King's motion. It held that the six percent interest payment made by the State under § 12–106(c) was not required by the constitution as a part of the "just compensation" paid for the property but rather was an additional element of damages, *i.e.*, that "interest on the award is in addition to, not an integral part of 'just compensation.'" The court relied for its holding on two conventional condemnation cases, *Lore v. Board of Public Works*, 277 Md. 356, 354 A.2d 812 (1976), and *Walker v. Acting Director*, 284 Md. 357, 396 A.2d 262 (1979). King appealed. After granting certiorari, we found it necessary to dismiss the appeal because a final judgment had not been entered in the case. *See King v. State Roads Comm'n*, 294 Md. 236, 449 A.2d 390 (1982). We did not, therefore, address the merits of King's supplemental interest claims.

Final judgment was thereafter entered in the case. The court awarded interest at six percent on the deficiency from April 26, 1977, the date of taking, through October 20, 1980, the date of the jury's award, and from that date until the time of actual payment in January of 1981 at the ten percent post-judgment interest rate set forth in § 11–107 of the Courts Article. From that determination, King again appealed. We granted certiorari prior to decision by the Court of Special Appeals to resolve the important question presented in the case.

### IV

King urges that we remand the case to the trial court to determine the proper rate of interest to be paid on the deficiency award. First, he claims that in quick-take condemnations, interest on the difference between the amount initially deposited on the date of the taking and the amount of the final award is a constitutionally mandated integral

part of just compensation. Second, he urges that the six percent interest rate prescribed by § 12–106(c) of the Real Property Article is merely a statutory minimum and that a higher interest rate may be awarded if necessary to satisfy the constitutional requirement of just compensation. Third, he suggests that § 12–106(c) is unconstitutional because (a) it usurps the authority of the judicial process to determine the proper rate of interest to be paid as part of just compensation for the taking and (b) because the six percent rate is inadequate to satisfy the constitutional just compensation requirement. King asserts that "the determination of the interest rate which constitutes just compensation is a matter to be judicially determined, not by a jury, but rather by a Court following a determination that there is, in fact, a deficiency on the [condemnor's] initial deposit . . . ."

As we have already indicated, the trial judge was wrong in concluding that interest is not an integral part of just compensation in a quick-take case. The principle that it is an element of just compensation is clearly recognized by our cases of *Hammond* and *Kelso, supra,* both quick-take condemnations, as well as by dicta in *Walker,* a conventional condemnation proceeding. The Supreme Court recognized and applied the principle in *Seaboard Air Line Ry. v. U.S.,* 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923), holding that when the government takes private property before paying full value for it, the property owner has a federal constitutional right to receive interest from the date of the taking to the date of payment. Other Supreme Court cases have reached the same result. *See, e.g., United States v. Hotel Co.,* 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521 (1947); *Phelps v. United States,* 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083 (1927); *United States v. Rogers,* 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566 (1921). These cases make clear that the required payment is not an award of interest in the traditional sense but rather that interest is a good yardstick by which to determine the rate of return on the property owner's money had there been no delay in payment of the full amount of the deficiency.

Since interest in a quick-take eminent domain case is an element of just compensation, and not a matter of legislative grace, it necessarily follows that a rate higher than the six percent statutory rate may at times be constitutionally required to compensate the property owner for the loss of use of his money between the time of the taking and payment of the full amount constitutionally due. This view is supported by decisions in other jurisdictions having quick-take provisions similar to our own.

The federal quick-take statute, the Declaration of Taking Act, 40 U.S.C. § 258a (1976), is similar to Maryland's quick-take provisions; like § 12–106(c) of the Real Property Article, it directs the payment of interest at six percent per annum on the deficiency from the date of taking to the date of payment.[3] The federal cases have uniformly held that the federal act imposes the six percent rate as a statutory minimum and not as a limit above which the rate cannot rise. *United States v. Blankinship,* 543 F.2d 1272 (9th Cir. 1976). *Accord: Washington Metro. Area T.A. v. One Parcel of Land,* 706 F.2d 1312 (4th Cir.1983); *U.S. v. 329.73 Acres, Grenada and Yalobusha Ctys.,* 704 F.2d 800 (5th Cir.1983); *United States v. 97.19 Acres, More or Less,* 511 F.Supp. 565 (D.Md.1981). In each of these cases, six percent was determined by evidence to be a constitutionally inadequate return

---

**3.** The Declaration of Taking Act states, in pertinent part:

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court."

on the property owner's money during the period between the taking and full payment. Thus, the government was required to pay a higher rate of interest. State court decisions are in accord. For example, under New York law, the statutory rate is presumed to be reasonable. *City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971). The presumption may be rebutted, however, by evidence showing that market interest rates were significantly higher during the period of nonpayment of the deficiency. *Matter of City of New York,* 58 N.Y.2d 532, 462 N.Y.S.2d 619, 449 N.E.2d 399 (1983). Illinois has construed its quick-take statute in the same way, holding that the six percent rate therein prescribed is only the minimum rate. *Department Transp. Etc. v. Rasmussen,* 108 Ill.App.3d 615, 64 Ill.Dec. 119, 439 N.E.2d 48, 59 (1982). The Minnesota Supreme Court, in *State by Spannaus v. Carney,* 309 N.W.2d 775 (Minn.1981), held that the amount of interest due to a property owner might not be limited to the statutory six percent rate.

We think this is the proper rule. The six percent rate specified in § 12–106(c) is the minimum rate of interest to which a property owner is entitled in a quick-take case. If the property owner produces evidence that the six percent rate is constitutionally insufficient, he should be entitled to a higher rate of return as part of just compensation.

As earlier observed, the purpose of awarding interest in a quick-take condemnation case is to put the property owner in as good a position pecuniarily as he would have occupied if his property had not been taken. If the property owner had been paid on the day of the taking when he was entitled to receive the full value of the property taken, he presumably would have invested the funds in a prudent manner. *United States v. 429.59 Acres of Land,* 612 F.2d 459 (9th Cir.1980). Thus, when payment is delayed, the jury must fix interest on any deficiency award at the rate a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principle would receive. *Id.* at 465. *See also Washington Metro Area T.A. v. One*

*Parcel of Land, supra,* 706 F.2d at 1322; *State by Spannaus v. Carney, supra,* 309 N.W.2d at 776.

To arrive at a reasonable rate of interest, three methods of ascertaining the proper rate have been used. *See* Annot., 56 A.L.R.Fed. 477 (1982). The first method of computation utilizes stable long term corporate bond rates to determine the rate of return that would have been available to a prudent investor. Interest at the average annual rate on Moody's Composite Index of Yields on Long Term Corporate Bonds has been computed for each year of the deficiency period. *See Washington Metro. Area T.A. v. One Parcel of Land, supra,* 706 F.2d 1312 (4th Cir.1983); *Georgia-Pacific Corp. v. United States,* 640 F.2d 328 (Ct.Cl.1980); *Miller v. United States,* 620 F.2d 812 (Ct.Cl.1980); *Pitcairn v. United States,* 547 F.2d 1106 (Ct.Cl.1976), *cert. denied,* 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978); *George's Radio & TV v. Ins. Co. of North America,* 536 F.Supp. 681 (D.Md. 1982); *United States v. 97.19 Acres, More or Less,* 511 F.Supp. 565 (D.Md.1981). Under the second approach, rates of return on various United States government securities are used. *United States v. Blankinship,* 543 F.2d 1272 (9th Cir.1976) (three to five year government notes); *United States v. 5.00 Acres of Land,* 507 F.Supp. 589 (E.D.Tex.1981), *rev'd on other grounds,* 680 F.2d 388 (5th Cir.1982) (three year Treasury bonds); *Matter of South Bronx Neighborhood Dev. Plan,* 110 Misc.2d 571, 442 N.Y.S.2d 869 (Sup.Ct.1981), *aff'd sub nom. Matter of City of New York,* 58 N.Y.2d 532, 462 N.Y.S.2d 619, 449 N.E.2d 399 (1983) (three to five year Treasury bonds). The third method combines several investment market rates. In *United States v. 429.59 Acres of Land,* 612 F.2d 459 (9th Cir.1980), the court averaged the following interest rates: (1) six month Treasury bills, (2) four to six month prime commercial paper, (3) ninety day prime bankers acceptances, and (4) six month certificates of deposit. The court in *United States v. 319.46 Acres of Land More or Less,* 508 F.Supp. 288 (W.D.Okl.1981), combined (1) four to six month prime commercial paper, (2) ninety day prime bankers acceptances, (3) six month Treasury bills, and

(4) three to five year United States government securities. In *Township of Wayne in County of Passaic v. Cassatly,* 137 N.J.Super. 464, 349 A.2d 545 (1975), the trial court was instructed to consider the "prevailing commercial interest rate," the prime rate, and the applicable legal rate. Any of the foregoing methods and perhaps others as well would appear to be reasonable in the ascertainment of the rate of interest that would be earned by a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal.

 We have held that § 12–106(c) interest due in a quick-take case accrues as a matter of law as part of the just compensation required to be paid for the taking. *Kelso, supra,* 294 Md. at 271, 449 A.2d 406.[4] The amount of just compensation to be paid on condemnation cases is not, however, a matter of law for the court, but of fact for the jury to determine. *Dodson, supra,* 294 Md. at 495, 451 A.2d 317. In a case, as here, where the property owner claims that the six percent statutory rate is inadequate to satisfy the constitutional just compensation standard, the question of the proper rate to be paid is manifestly a matter for factual determination by the trier of fact, and requires evidence of the prevailing market rates. *See Monongahela Navigation Co. v. United States,* 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893); *United States v. 100 Acres of Land, Etc., Marin Cty., Cal.,* 468 F.2d 1261 (9th Cir.1972), *cert. denied,* 414 U.S. 822, 94 S.Ct. 119, 38 L.Ed.2d 54 and 414 U.S. 864 (1973); *Department Transp. Etc. v. Rasmussen,* 108 Ill.App.3d 615, 64 Ill.Dec. 119, 439 N.E.2d 48 (1982).

## V

 At trial, King did not contend that he was constitutionally entitled to prejudgment interest in an amount

---

4. It was in this limited context that we said in *Walker, supra,* 284 Md. at 365 n. 3, 396 A.2d 262 that "interest from the date money is paid into court is not a matter for consideration by the jury in a 'quick-take' case."

greater than the six percent rate set forth in § 12–106(c). Nor did he present any evidence concerning the proper rate of interest to be paid for the delay in payment of the deficiency. His motion for supplemental interest was filed long after the jury had returned its inquisition. Nothing prevented King from presenting this evidence to the jury; the jury proceeding was tried before a judge different from Judge Bell. There is a long-standing rule that "entry of a judgment in an eminent domain proceeding cover[s] all damages which ha[ve] accrued up to that time." *Walker, supra,* 284 Md. at 364, 396 A.2d 262. Interest, as we have said, is an element of just compensation in a quick-take case, a matter for factual determination by the trier of fact where the statutory rate is challenged.[5] All elements of just compensation should be decided by the same jury. Like the property owner in *United States v. 100 Acres, supra,* King had his day in court before a jury to prove just compensation and to present all his evidence affecting that determination. He is not entitled to another trial to prove additional elements of just compensation which he could have presented but did not during the original trial.

JUDGMENT AFFIRMED WITH COSTS.

---

5. Sections 40 and 40B of Art. III of the Maryland Constitution grant the right to have a jury set the amount of just compensation in eminent domain cases where the parties cannot agree on an amount. *See Bouton v. Potomac Edison Co.,* 288 Md. 305, 418 A.2d 1168 (1980).