605 F.2d 1325
 CA 79-3595 MARCOIN, INC., a Virginia Corporation, Edwin K.
Williams & Co. East, a Virginia Corporation, Appellants,
v.
EDWIN K. WILLIAMS & CO., INC., a California Corporation, Appellee.
 No. 77-2435.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 10, 1979.
Decided Sept. 28, 1979.
 
 Robert M. Goolrick, Washington, D. C. (Loren Kieve, Steptoe & Johnson, Washington, D. C., Richard E. Dixon, Swinburne & Dixon, Fairfax, Va., on brief), for appellants.
 Stuart H. Harris, Washington, D. C. (John S. Kingdon, Howrey & Simon, Washington, D. C., on brief), for appellee.
 Before BUTZNER and WIDENER, Circuit Judges, and MILLER, Judge of the United States Court of Customs and Patent Appeals.*
 WIDENER, Circuit Judge:
 
 
 1
 The appellants, Marcoin, Inc. and its wholly owned subsidiary, Edwin K. Williams & Co. East (appellants or Marcoin), brought this action against Edwin K. Williams & Co., Inc. (appellee or Williams) for breach of a settlement agreement. Jurisdiction is based on diversity of citizenship. The district court found that Williams' attorney, Donald Smaltz, was not authorized to enter into a binding settlement agreement; that Williams had not approved the settlement; and that a condition precedent to contract formation, a formal written agreement ratified by both companies' boards of directors, had not been executed. Based on these three conclusions, the district court held that no contract had been formed and Marcoin could not recover. Marcoin appeals.
 
 
 2
 This case is a suit to enforce a claimed agreement of settlement and arises out of efforts to settle litigation between these parties in the United States District Court for the Northern District of California, which was broadened to include litigation in Florida and Georgia. The parties agree that California law applies, although there is no dispute pertinent as to its substance here. A meeting to discuss settlement was held on September 17, 1976 between the major officers of the parties. They were not able to agree on a settlement at that time, but agreed that negotiations would continue through their attorneys. Following this meeting, a number of offers and counteroffers were made which culminated in the events described below.
 
 
 3
 On November 10, 1976, Marcoin's attorney, Raymond Fisher, sent a letter containing a detailed offer of settlement to Donald Smaltz, Williams' attorney. The letter stated that the offer was to remain open until noon on November 12th. This deadline was extended orally to November 15th, apparently because of the absence of Smaltz at the time the letter was received. Smaltz responded to this letter on November 15th.** His letter rejected Marcoin's offer and presented a counteroffer.
 
 
 4
 On November 20, 1976, Fisher (Marcoin's counsel) telephoned Smaltz (Williams' attorney) and they discussed the settlement. The parties disagree on the substance of the conversation. Fisher's recollection, as reflected in his letter to Smaltz on November 22nd, was that he accepted the counteroffer of the November 15th letter with a small exception which was also agreed to. In a letter to Fisher on November 28th, Smaltz denied that final agreement had been reached. In the meantime, the Ninth Circuit Court of Appeals had issued an order which increased the bond Marcoin had to post in the California litigation which was the subject of the alleged settlement contract. After this order was issued, Williams broke off settlement negotiations with Marcoin in accordance with previous instructions from its principal executive officer. Marcoin claims that the November 20, 1976 phone conversation was an acceptance which created a binding contract. Williams denies that the phone call was an acceptance, and alternatively argues that even if the phone call were an acceptance that Smaltz was not authorized to make the offer and that in any event no contract was formed because the contract was not formally executed and ratified by Williams' officers which Williams claims was a condition precedent to contract formation.
 
 
 5
 Williams' support for the lack of authorization and condition precedent arguments is based largely on the testimony of Margaret T. Williams (president of Williams) and Smaltz and on the prior history of litigation and settlement negotiations between the parties. Williams and Smaltz both testified that Smaltz only had authority to negotiate, not to bind. Additionally, it was shown that in prior negotiations involving different litigation, settlements were made final in writings executed and ratified by the parties' boards of directors. Of course, the parties disagree on the significance of this past procedure. Marcoin views it simply as a formality or memorialization, while Williams views it as evidence tending to show the establishment of a condition precedent to the formation of a binding contract.
 
 
 6
 After reviewing the testimony of the parties and the history of negotiations, the district court found that Smaltz had no authority to bind Williams:
 
 
 7
 Mrs. Williams made it clear to her counsel he could only negotiate and that Williams was to determine the acceptability of any proposals for settlement. Smaltz fully realized the limitation on his authority. Smaltz, Mrs. Williams, Hamilton and Keep all testified that Smaltz was not given any authority to settle.
 
 
 8
 The district could also found that Williams required that "a formal written contract of settlement . . . be prepared and presented for its acceptance or rejection, and that no binding agreement could be made except through such a contract."
 
 
 9
 It is clear that taken alone, the testimony of Williams and Smaltz and the history of settlement negotiations between the two companies provided a substantial factual basis for the district court's conclusion. However, the district court in its opinion failed to consider one very important piece of evidence which is directly contrary to its conclusion that Smaltz was without authority to write the letter of November 15th. In answering Marcoin's interrogatory number 10(b), Williams admitted that it authorized, ratified or approved the preparation of, and the general terms of, but not the specific language of, the November 15, 1976 letter which admittedly makes an offer of settlement.[1] The import of this answer is that Williams approved the preparation of, and general terms of, the formal written offer made in Smaltz's letter, and could reasonably be construed that Williams gave Smaltz the authority to make the offer and thereby bind the company. From this, the argument, not unreasonably, is that the answer to the interrogatory may be viewed as a waiver of any condition precedent to contract formation, or at least as an admission against interest which must be dealt with. Thus, the apparent effect of this interrogatory is to undercut a, or even the, theory of the defense of the case, as well as the district court's opinion. To repeat, the district court did not take account of this piece of evidence in its opinion.
 
 
 10
 We do not feel, however, that the answer to this interrogatory, in itself, requires outright reversal and judgment for Marcoin. As a general rule, an answer to an interrogatory does not conclusively bind the answering party in all instances. Pressley v. Boehlke, 33 F.R.D. 316 (W.D.N.C.1963) (defendant required to answer interrogatory designed to limit scope of defense because his answer would not be a bar to asserting a different position at trial). Cf. Maryland v. Kemp, 194 F.Supp. 838, 840 (D.Md.1961) (when defendant's answers to interrogatories tended to show negligence, and defense counsel agreed that their sole defense was contributory negligence, plaintiff was permitted to read into the record answers to interrogatories as evidence of negligence without other proof of negligence). Wright & Miller, Federal Practice and Procedure, Civil § 2181; Barron & Holtzoff, Federal Practice and Procedure, § 778. Thus, while there is some discretion in the trial judge as to the weight to be given to answers to interrogatories, this does not justify the district court's failure in the case at bar to deal with interrogatory 10(b) with its studied answer which may well go to the heart of at least one aspect of the case, and perhaps to the whole case. It may be that after expressly considering this interrogatory and weighing it with the rest of the evidence the district court might reach the same result on the same or other ground. But again it may not be so, and the answer to the interrogatory is in such direct conflict with a significant finding in the district court's opinion that we do not feel we should affirm.
 
 
 11
 We hold that the district court should have considered the interrogatory in its opinion, should have stated what weight it was given, and should have explained its fact finding for the defendant, which was contrary to the clear import of Williams' answer to interrogatory 10(b). This is not to say that a district court must expressly review in its opinion every piece of evidence in every case, nor does our decision have any effect on the rule that a district court's decision will be affirmed if it is right for the wrong reason. While it is the function of the district court to weigh the evidence, where an answer to an interrogatory which may go to the heart of the whole case is directly contrary to a key finding of the district court, we feel that if the interrogatory is not taken account of, the case must be remanded for further consideration.
 
 
 12
 Because of the emphasis we have placed on interrogatory 10(b), the entire course of the trial may well be altered on remand. In view of that, either party, on remand, may receive a new trial on request. If neither party so requests a new trial, the district court will reconsider its decision in such manner as it may deem appropriate not inconsistent with this opinion.
 
 
 13
 VACATED and REMANDED.
 
 
 
 *
 Sitting by designation
 
 
 **
 The letter was actually signed by Michael R. Scott, an associate of Smaltz. This is of no significance
 
 
 [1]
 The questions are as follows:
 Q. (b) Did you authorize, ratify, or approve the preparation of that letter (the letter of November 15th) by your attorney?
 A. (b) Yes, as to the general terms contained therein, but not as to the specific language.