876 F.2d 353
 FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for San Marino Savings and Loan Association,
Plaintiff-Appellee,
v.
QUALITY INNS, INC.; Quality Hotels and Resorts, Inc.,
Defendants-Appellants,
and
Quality Inns International, Inc., Defendant.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for San Marino Savings and Loan Association,
Plaintiff-Appellant,
v.
QUALITY INNS, INC.; Quality Hotels and Resorts, Inc.;
Quality Inns International, Defendants-Appellees.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for San Marino Savings and Loan Association,
Plaintiff-Appellee,
v.
QUALITY INNS, INC.; Quality Hotels and Resorts, Inc.,
Defendants-Appellants,
and
Quality Inns International, Defendant.
 Nos. 88-1566, 88-1567 and 88-1725.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 7, 1988.
Decided May 30, 1989.
 
 David F. Albright, Sr. (Harry M. Rifkin, Semmes, Bowen & Semmes, on brief), for appellants/cross-appellees.
 Michael H. Krimminger, Daniel M. Litt (Melrod, Redman & Gartlan; Dorothy L. Nichols, James L. Blair, Federal Home Loan Bank Bd., on brief), for appellee/cross-appellant.
 Before HALL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 This appeal arises from an action brought by the Federal Savings and Loan Insurance Corporation (FSLIC), in its capacity as receiver for San Marino Savings and Loan Association, seeking to recover damages from Quality Inns, Inc., Quality Hotels and Resorts, Inc. (Quality), and Quality Inns International, Inc.[1] Quality appeals the district court's judgment finding Quality liable to the FSLIC for breach of fiduciary duty and the dismissal of its counterclaim. In its cross-appeal, the FSLIC claims the court awarded insufficient damages. We affirm the court's judgment concerning Quality's liability to the FSLIC in all respects except its measure of the prejudgment interest owed to the FSLIC. We vacate the district court's order dismissing Quality's counterclaim.
 
 
 2
 * The facts are fully reported in the district court's opinion.[2] For the purpose of this appeal they can be briefly summarized. On August 2, 1983, San Marino loaned American Resort Services, Inc. (ARS), $27,000,000 for the construction of Silver Creek Ski Resort. The loan agreement allocated $900,000 of the loan to line item "09-016 Furniture and Fixtures." Quality had previously agreed with ARS to provide design and purchasing services for the project. The day the loan documents were executed Quality further agreed with ARS to assist the construction lender, San Marino, in the administration of the loan. One week later Quality entered into an agreement with San Marino to inspect and approve construction progress for the lender.
 
 
 3
 Quality assigned one of its employees to be the project manager. In addition to serving as an inspector for San Marino, the project manager reviewed and approved all loan disbursement requests submitted by ARS, analyzing each request by line item before forwarding it to San Marino.
 
 
 4
 On January 31, 1984, ARS requested a disbursement of $1,205,242. Included within this draw, the seventh draw, was a request for $719,732, all of the remaining funds allocated under line item 09-016 to purchase furniture and fixtures. Quality and ARS knew that the money disbursed under line 09-016 was for the purchase of furniture for the condominiums. The project manager reduced the request, approved a draw for $1,021,480, and asked that the money be sent to ARS and Quality. San Marino then wire transferred $1,021,480 to an account bearing ARS's name. All persons authorized by ARS as signatories to this account were officers or employees of Quality.
 
 
 5
 Quality was entitled to pay itself a fee of $25,000 out of the seventh draw. ARS instructed Quality to transfer $358,509 from the draw to ARS and deposit $719,732 into an escrow account. But after Quality transferred the money ARS requested and took its fee, only $637,971 was left. Quality used the $637,971 to reimburse itself for unpaid invoices and operating expenses allegedly owed by ARS. Neither ARS nor San Marino authorized Quality to pay itself $637,971 from these funds, and ARS demanded that Quality return the money.
 
 
 6
 On February 3, 1984, the Federal Home Loan Bank appointed the FSLIC conservator of San Marino, and on December 6, 1984, it was appointed receiver. Subsequently, Silver Creek defaulted on its loan, and the FSLIC purchased the property. Claiming that Quality had misappropriated the $719,732 allocated in the seventh draw for condominium furnishings, the FSLIC brought this action.
 
 II
 
 7
 Quality contends that the district court erred in finding that Quality was San Marino's agent for purposes of seeing that the money disbursed in the seventh draw was spent as authorized. Our review of the record shows that the district court's findings are adequately supported by the evidence.
 
 
 8
 Quality's president sent a letter to San Marino confirming that Quality's role as inspector of the Silver Creek project would be "to inspect, photograph, validate materials on site and approve construction progress for San Marino." In addition to these duties, Quality, acting as the "bank inspector of construction," approved all draw requests, including the seventh draw, submitted by San Marino. Quality received a fee of $75,000 from San Marino for its services. As San Marino's agent, Quality owed a fiduciary duty to San Marino to approve the seventh draw only if the disbursement of funds was justified. Quality contends that, regardless of any duty it owed to San Marino in approving the seventh draw, once the money was disbursed, Quality's duty to San Marino ended.
 
 
 9
 As the district court noted, "[i]f the funds had been disbursed directly to ARS, ARS would have been responsible for assuring that the Furniture and Fixtures money from the Seventh Draw was spent on furnishings for the condominium rooms." 674 F.Supp. at 528. But this is not what happened. The money was disbursed to ARS and Quality and deposited in an account controlled by Quality. The district court properly found that once Quality exercised control over the funds, which it had approved for San Marino to disburse for furniture and fixtures for the condominiums, Quality's duty as San Marino's agent required Quality to spend the funds only on furniture and fixtures.
 
 
 10
 Quality contends that it did not owe this duty to San Marino because it did not control the furniture funds. It points out that the money was wired to an account bearing ARS's name and ARS's federal tax identification number. In addition, although officers and employees of Quality were the sole signatories to the account containing the funds, ARS could change this at any time by corporate resolution.
 
 
 11
 We are not persuaded by Quality's argument. The evidence establishes that Quality's employees were the sole signatories of the account at all relevant times and that they drew on the funds in the account for unauthorized expenditures. The district court properly concluded that the evidence established an agency, and consequently a fiduciary, relationship between Quality and San Marino under Maryland law. See Ramsburg v. Sykes, 221 Md. 438, 442, 158 A.2d 106, 108 (1960); Restatement (Second) of Agency Sec. 1(1), 13 (1958).
 
 III
 
 12
 Quality also asks the court to reduce its liability by some $605,000. First, Quality contends that it should be credited for the $300,000 worth of furniture ultimately placed in the condominiums by ARS. When the FSLIC foreclosed on Silver Creek it took title to all real estate and personalty of the project, including the furniture. Quality argues that allowing the FSLIC to take the furniture as well as the $300,000 gives the FSLIC a double recovery.
 
 
 13
 There is no double recovery. ARS never paid for the furniture, and the vendor filed a claim in the bankruptcy proceedings. The FSLIC paid $400,000 into the registry of the bankruptcy court to be distributed to ARS's unsecured creditors, including the furniture vendor. If Quality had not misappropriated the money in escrow and applied the money to purchase furniture, the FSLIC would have acquired the furniture at the foreclosure sale without liability for the vendor's claim.
 
 
 14
 Quality also argues that Quality and ARS were joint tortfeasors and that the furniture obtained by ARS constitutes a partial satisfaction from one tortfeasor which must be regarded as a partial satisfaction against Quality. Furthermore, Quality argues that mutual covenants not to sue executed by FSLIC and ARS also released Quality on the theory that the release of one joint tortfeasor releases all joint tortfeasors.
 
 
 15
 The district court found that ARS and Quality were not joint tortfeasors and that under South Carolina law, which governed the release, Quality was not exonerated for its breach of fiduciary duty. See Bartholomew v. McCartha, 255 S.C. 489, 491-92, 179 S.E.2d 912, 914 (1971). We find no error of fact or law in the district court's disposition of this issue. See 674 F.Supp. at 529-30.
 
 
 16
 Quality also argues that its liability should be reduced by the $305,165 it spent on ski equipment, restaurant equipment, food, motor parts, and miscellaneous goods, purchased for the project with the funds in question. The district court found that Quality was liable for the $305,165 because it was not entitled to draw on these funds, designated for furniture for the condominiums, to reimburse itself for the purchase of these items. 674 F.Supp. at 529. Quality contends that the district court was bound by the FSLIC's judicial admission in its complaint and interrogatory answers that the money was for "furniture, fixtures, and equipment for the Project." Accordingly, argues Quality, since it spent $305,165 on equipment for the project, a permissible purpose, its liability should be reduced by this amount. At the very least it asks this court to remand the case because the district court failed to explain in its opinion what weight it gave to the FSLIC's conflicting interrogatory answers as required under Marcoin, Inc. v. Edwin K. Williams & Co., 605 F.2d 1325 (4th Cir.1979).
 
 
 17
 We reject Quality's argument. Statements made by the FSLIC that the money was designated for furniture and equipment for the project were not so narrow as to prohibit the district court from finding that both San Marino and Quality understood that the money was to be used solely for furnishings for the condominiums. Moreover, we need not remand the case to the district court so that it may explain the weight it gave to the FSLIC's admissions. In Marcoin, 605 F.2d at 1328, this court held that "where an answer to an interrogatory which may go to the heart of the whole case is directly contrary to a key finding of the district court," the court should consider the interrogatory answer and state in its opinion what weight it was given. Marcoin is inapplicable to this case because the FSLIC's statements are not directly contrary to the district court's findings; they are simply broader. Ample evidence supports the district court's finding that Quality, San Marino, and ARS understood that $719,732 of the seventh draw was for furniture and fixtures for the condominiums.
 
 IV
 
 18
 In its cross-appeal, the FSLIC argues that Quality is liable for the entire $719,732 disbursed in the seventh draw for furniture and fixtures. Before we reach the merits of this issue, we must determine whether we have jurisdiction of the cross-appeal.
 
 
 19
 On November 30, 1987, the district court entered judgment against Quality for $637,791 plus simple interest at a rate to be determined by the parties. Quality appealed this order and the FSLIC filed a cross-appeal. The court issued another order on April 12, 1988, which set the rate of prejudgment interest and determined costs. Quality filed an appeal of this order but the FSLIC did not. Quality contends that this court does not have jurisdiction of the FSLIC's cross-appeal because the second order was the proper order to appeal under 28 U.S.C. Sec. 1291.
 
 
 20
 The April 12 order was the proper order to appeal. The first order settled the issue of liability, but it is the second order that resolved the issue of prejudgment interest and terminated the litigation. Fireman's Fund Ins. Co. v. Biafore, Inc., 526 F.2d 170, 172-73 (3d Cir.1975). Although the FSLIC appealed a nonfinal order, this court may assert jurisdiction over its cross-appeal. Federal Rule of Appellate Procedure 4(a)(2) provides that "a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." On November 30, 1987, the court announced its decision about the amount FSLIC was entitled to recover. Rule 4(a)(2) treats FSLIC's notice of appeal to the November 30 order as filed on the date of the entry of the final order of April 12. "[A] premature appeal taken from an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." Richerson v. Jones, 551 F.2d 918, 922 (3d Cir.1977). Quality has not shown that it suffered any prejudice or unfair surprise, and the record shows that Quality had sufficient notice of the cross-appeal. We have jurisdiction of the FSLIC's cross-appeal.
 
 
 21
 We now turn to the merits of the cross-appeal. The FSLIC argues that Quality is liable for the entire $719,732 designated in the seventh draw for furniture and fixtures. The district court found that San Marino entrusted Quality with $1,021,480 and that Quality had a fiduciary duty to see that the money was distributed as directed by San Marino. The district court also found that $719,732 in the seventh draw was allocated for the purchase of furniture and fixtures for the condominiums. Nevertheless, the district court decided that Quality was only liable for $637,971 because that was all of the money available to Quality to spend on furniture and fixtures after it transferred $358,509 from the seventh draw to ARS. The FSLIC contends that Quality was not authorized to send any part of the $719,732 earmarked for furniture to ARS and so Quality is liable for the entire amount.
 
 
 22
 We agree with the district court. Clearly, Quality breached its duty to San Marino when it spent $637,971 to reimburse itself for operating expenses and miscellaneous goods rather than to purchase furniture for the condominiums. But Quality was authorized to transfer funds to ARS for expenditures in accordance with the seventh draw. When part of the $719,732 allocated to furniture was transferred to ARS, ARS was contractually obligated to expend the funds in accordance with the draw request. The district court properly held that Quality was not liable for the money ARS received from the seventh draw.
 
 V
 
 23
 Quality assigns error to the court's award of interest. Quality argues that the award of prejudgment interest was impermissibly excessive under Maryland law. The district court originally asked the parties to agree on a rate of interest but they were unable to do so. Quality proposed the use of either the three-month Treasury bill rate or the average daily rate earned by the FSLIC on its daily interest deposit account with the Federal Home Loan Bank.
 
 
 24
 The district court, citing George's Radio & Television Co., Inc. v. Insurance Co. of America, 536 F.Supp. 681 (D.Md.1982), decided that Maryland's postjudgment interest rate of 10 percent, Md.Cts. & Jud.Proc. Sec. 11-107, was the appropriate rate. In George's Radio, the court stated that Maryland's postjudgment interest rate was one possible way to determine prejudgment interest in an admiralty case. The court reasoned that, since the Maryland legislature had decided that 10 percent was the appropriate rate of interest on judgments, it would be anomalous to award prejudgment interest at a rate lower than 10 percent. 536 F.Supp. at 684.
 
 
 25
 The district court's reliance on George's Radio is misplaced. As that court itself stated: "Admiralty courts are not bound by state statutory maximum interest rates in determining the appropriate rate of [prejudgment] interest." 536 F.Supp. at 683. Cases cited by the FSLIC to support the contention that determining the proper rate of prejudgment interest was committed to the trial court's discretion are likewise admiralty cases. See, e.g., Ameejee Valleejee and Sons v. M/V Victoria U., 661 F.2d 310, 313 (4th Cir.1981).
 
 
 26
 In this case the FSLIC seeks to recover for Quality's breach of fiduciary duty to San Marino, a state law claim. Since the district court determined Quality's liability for prejudgment interest under Maryland law, the amount awarded should not exceed Maryland's maximum rate of interest. The Maryland Constitution states that the legal rate of interest is six percent unless otherwise provided by the Maryland legislature. Md. Const. art. III, Sec. 57. In 1980 the Maryland legislature decided that the legal rate of interest on judgments should be 10 percent. Md.Cts. & Jud.Proc. Sec. 11-107. Maryland courts have interpreted Sec. 11-107 to apply only to judgments. See Mayor of Baltimore v. Kelso Corp., 294 Md. 267, 273, 449 A.2d 406, 409 (1982); Maryland Port Admin. v. C.J. Langenfelder & Son, Inc., 50 Md.App. 525, 539-46, 438 A.2d 1374, 1382-86 (1982). We find that the district court was bound by Maryland's legal rate of prejudgment interest, which is six percent.
 
 
 27
 The FSLIC contends that it is entitled to recover compound prejudgment interest. The district court held that Quality was liable for prejudgment interest because it breached its fiduciary duty; but it was only liable for simple and not compound interest because it was not a trustee, the parties did not intend for Quality to be a trustee, and the account was titled in the name of ARS.
 
 
 28
 Restatement (Second) of Trusts Sec. 207, comment (d), provides that a trustee may be responsible for compound interest where the trustee "uses trust funds in his own business and it does not appear how much he has earned thereon." See also Riggs v. Loweree, 189 Md. 437, 445, 56 A.2d 152, 157 (Md.1947). Although Quality was not called a trustee, it unquestionably owed a fiduciary duty to San Marino not to reimburse itself from money entrusted to it for a specified purpose. "An agent is a fiduciary with respect to matters within the scope of his agency." Restatement (Second) of Agency Sec. 13 (1958). "The name which the parties give to the relation is not determinative." Restatement Sec. 13, comment c. As a general rule, "a deposit in escrow creates a trust at the time of the delivery in escrow." Century Indemnity Co. v. Maryland, 144 F.Supp. 671, 674 (D.Md.1956); Restatement (Second) Trusts Sec. 32, comment d. Because Quality, regardless of its title, was subject to essentially the same duties as a trustee, Quality is liable as a trustee for compound prejudgment interest. We vacate that portion of the district court's order awarding the FSLIC ten percent simple prejudgment interest and remand to the district court for computation of compound interest at the rate of six percent.
 
 VI
 
 29
 Quality filed a counterclaim alleging that the FSLIC was liable for some $382,238 under theories of conversion and unjust enrichment. It appeals the district court's order dismissing its counterclaim for lack of subject matter jurisdiction. The district court followed the reasoning of the Fifth Circuit in North Mississippi Savings & Loan Assoc. v. Hudspeth, 756 F.2d 1096 (5th Cir.1985), and held that, under 12 U.S.C. Secs. 1464(d)(6)(C) and 1729(d), Quality, as a creditor of a failed savings and loan, had to exhaust its administrative remedies before seeking judicial relief for its claims against the FSLIC.
 
 
 30
 While this appeal was pending, the Supreme Court decided this issue in Coit Independence Joint Venture v. FSLIC, --- U.S. ----, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). The Court rejected the reasoning of Hudspeth and held that creditors of a failed savings and loan association "are not required to exhaust FSLIC's current administrative procedures before bringing suit" and "are entitled to de novo consideration of their claims in court." Coit, at ----, 109 S.Ct. at 1376. We vacate the district court's order dismissing Quality's counterclaim.
 
 
 31
 The judgment of the district court is affirmed in part and vacated in part. The case is remanded for calculation of prejudgment interest in accordance with this opinion and for consideration of Quality's counterclaim in the light of Coit. The FSLIC shall recover its costs.
 
 
 32
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 
 
 33
 MURNAGHAN, Circuit Judge, concurring in part and dissenting in part:
 
 
 34
 For the most part, I can find no fault in Judge Butzner's opinion; indeed it is a thoughtful and lucid presentation of the issues, and undoubtedly, in all major facets, reaches a just result. I dissent, however, as to one small concern--the majority's reversal of the district court's award of ten percent prejudgment interest. The majority finds that Maryland law caps prejudgment interest at a rate of six percent. As I believe the Maryland legislature has indicated otherwise, I must disagree.
 
 
 35
 The Maryland Constitution specifies that the legal rate of interest is six percent, unless otherwise provided by the legislature. Md. Const. Art. III, Sec. 57. The Maryland General Assembly has decreed that the legal rate of interest on judgments will be ten percent. Md.Cts. & Jud.Proc. Sec. 11-107. While Maryland courts have naturally confined Sec. 11-107 to the judgment setting, see, e.g., Mayor and City Council of Baltimore v. Kelso Corp., 294 Md. 267, 273, 449 A.2d 406, 409 (1982); Maryland Port Admin. v. C.J. Langenfelder & Son, Inc., 50 Md.App. 525, 539-46, 438 A.2d 1374, 1382-86 (1982), they have not drawn the distinct dichotomy between pre- and post-judgment situations perceived by the majority.[1]
 
 
 36
 Indeed, Maryland accords the same rationale for both types of interest. In Mayor of Baltimore, the court stated the purpose of postjudgment interest was to compensate the judgment creditor for the loss of the moneys that are due and owing to him from the time judgment is entered until it is paid. 294 Md. at 271, 449 A.2d at 408. Similarly, prejudgment interest is designed "to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of the income from said funds." I.W. Berman Properties v. Porter Bros., Inc., 276 Md. 1, 24, 344 A.2d 65, 79 (1975). Given such an identity of purpose, the legislative determination that the old six percent rate no longer fairly compensated judgment creditors would appear equally to extend to prejudgment situations. See generally Mayor of Baltimore, 294 Md. at 271-73, 449 A.2d at 409. Prejudgment interest accompanies postjudgment interest and crossing the dividing line in no way justifies or indicates a change in the rate of interest.
 
 
 37
 Furthermore, as the court indicated in Mayor of Baltimore, an unfairly low rate of interest acts as a direct incentive to the liable party to delay in satisfying a judgment or, in this case, concluding litigation. A disparity between pre- and post-judgment interest would merely exacerbate the disincentive. Such reasoning has apparently led several federal district court judges implicitly to assume that Sec. 11-107's rate applies to prejudgment interest. See Vlachos v. M/V Proso, 637 F.Supp. 1354, 1376 (D.Md.1986); Sea Land Industries, Inc. v. General Ship Repair, 530 F.Supp. 550, 569 (D.Md.1982).
 
 
 38
 I readily concede that the admiralty cases cited by the district court and the FSLIC may not at first glance fully support the award of prejudgment interest at a rate facially variant from the Maryland legal rate of interest. The fact remains, however, that it is indeed anomalous to restrict prejudgment interest to the general legal rate of six percent when the Maryland legislature has determined that ten percent is the appropriate rate of interest for judgments. See George's Radio & Television Co., Inc. v. Insurance Co. of America, 536 F.Supp. 681, 683 (D.Md.1982).
 
 
 39
 Section 11-107 of the Md.Cts. & Jud.Proc. Article itself does not draw a distinction between post- or pre-judgment situations but speaks only of "interest on a judgment." The Maryland Constitution, Art. III, Sec. 57, concerns only the legal rate of interest saying nothing about what it is to be applied to. Interest calculated on the basis of a judgment is interest on a judgment or judgment interest whether calculation operates with respect to the period before judgment or with respect to the period after judgment. Prejudgment interest is one form of interest on a judgment. The judgment is the basis on which the calculation is made.
 
 
 40
 In short, I conclude that, though perhaps indirectly, the legislature of Maryland has otherwise provided as to the legal rate of prejudgment interest. For the above reasons, I do not believe that the Maryland Court of Appeals would limit prejudgment interest to the general six percent legal rate, and would affirm the district court's award.
 
 
 
 [1]
 The district court dismissed Quality Inns International, Inc., for lack of evidence. The FSLIC has not appealed this ruling
 
 
 [2]
 FSLIC v. Quality Inns, Inc., 674 F.Supp. 522 (D.Md.1987)
 
 
 [1]
 Although in Mayor of Baltimore, supra, the prejudgment interest rate was set at six percent, that rate was specifically required under Md. Real Property Code Sec. 12-106(c). In fact, Sec. 12-106(c) sets six percent as the minimum rate of prejudgment interest to which a property owner is entitled in a quick-take condemnation action. If the property owner produces evidence that the six percent rate is constitutionally insufficient, he is entitled to a higher rate of return as part of just compensation. King v. State Roads Comm'n, 298 Md. 80, 467 A.2d 1032 (1983)
 Interestingly in Md. Port Admin., supra, even though the court found Sec. 11-107 generally inapplicable to a Board of Contract Appeals decision, it, nevertheless, permitted 10% predecision interest as part of the equitable remedy awarded to the applicant.